# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ROBIN G. THORNTON, *on behalf of*
*herself and others similarly situated,*

      Plaintiff,

    v.                                                 No. 1:20-cv-105-KWR-SMV

TYSON FOODS, INC.; CARGILL MEAT
SOLUTIONS CORP.; JBS USA FOOD COMPANY; and
NATIONAL BEEF PACKING COMPANY, LLC,

      Defendants.

## CONSOLIDATED WITH:

MICHAEL LUCERO, *on behalf of*
*himself and others similarly situated,*

      Plaintiff,

    v.                                                 No. 1:20-cv-106-KWR-SMV

TYSON FOODS, INC.; CARGILL MEAT
SOLUTIONS CORP.; JBS USA FOOD COMPANY; and
NATIONAL BEEF PACKING COMPANY, LLC,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendants' Motion to Dismiss Plaintiff Lucero's Complaint, filed on March 9, 2020 **(Doc. 45, 1:20-cv-106),** Defendants' Motion to Dismiss Plaintiff Thornton's Complaint, **(Doc. 43, 1:20-cv-105)**, and Plaintiff Lucero's Motion to File Second Amended Complaint, filed on May 12, 2020 **(Doc. 55).** Having reviewed the pleadings

and arguments, the Court finds Defendants' arguments well-taken, therefore the Motions to Dismiss are **GRANTED** and the Motion to Amend is **DENIED** as futile.

## BACKGROUND

Plaintiffs Robin Thornton and Michael Lucero filed substantially similar putative class actions and their cases were consolidated for pretrial matters. Defendants produce and sell beef products to retailers. Both Plaintiffs assert that Defendants are misleading retailers and consumers by labeling their beef "Product of the USA", when in fact the cattle are raised in foreign countries, imported into the United States live, then slaughtered and processed in the United States. Plaintiff Thornton asserts a putative class of consumers who were deceived into paying higher prices for American beef when it was allegedly foreign beef. Plaintiff Lucero asserts a putative class of American Ranchers who receive less for their American cattle because of the influx of imported cattle sold as product of the USA.

### A. Procedural History

Plaintiff Michael Lucero is a "long time producer of beef cattle with a multi-general history of ranching in New Mexico." 20-cv-106, Doc. 1-1 ¶ 14. Plaintiff Lucero brings a class and subclass of all ranchers and Farmers in the United States (or New Mexico) who produced beef cattle for the commercial sale that were born, raised, and slaughtered in the United States. 20-cv-106, Doc. 1-1, 58 of 67, ¶49.

Plaintiff Thornton is a consumer who bought Defendants' beef from various retail stores. She brings a putative class action of retail consumers allegedly deceived by Defendants' county or origin label. Aside from the different classes, the two complaints appear to be substantially similar.

Plaintiff Thornton filed a complaint alleging violation of the New Mexico Unfair Practices Act pursuant to NMSA § 57-12-1; (2) breach of express warranty; and (3) unjust enrichment. Plaintiff Lucero's complaint alleges (1) violation of the NM UPA and (2) unjust enrichment.

On March 11, 2020, the cases were consolidated for all pre-trial purposes, and the parties agreed the cases would be tried separately before the undersigned. **Doc. 47.**

After briefing on the motions to dismiss were complete, Plaintiff Lucero filed a motion to amend complaint to replace his New Mexico Unfair Practices Act Claim with a violation of the New Mexico Antitrust Act. Defendants opposed the motion as futile.

**B.  Federal Meat Inspection Act and beef labeling.**

Federal law "regulates a broad range of activities" related to meat processing. *Nat'l Meat Ass'n v. Harris,* 565 U.S. 452, 455-456 (2012). Labels on beef products are regulated under the Federal Meat Inspection Act ("FMIA"), codified at 21 U.S.C. § 601, *et seq.* Meat products may not be sold "under any… labeling which is false or misleading, but… labeling and containers which are not false or misleading and which are approved by the Secretary are permitted." § 607(d). The FMIA allows the USDA to ban labeling for meat products that it finds to be false or misleading. § 607(e).

The USDA regulates beef labels through its Food Safety and Inspection Service ("FSIS"). FSIS administers a label approval program which ensures that no meat products "bear any false or misleading marking, label, or other labeling and [that] no statement, word, picture, design or device which conveys any false impression or gives any false indication of origin or quality or is otherwise false or misleading shall appear in any marking or other labeling." 9 C.F.R. § 317.8(a).

FSIS has provided by regulation that "no final label may be used on any [meat] product unless the label has been submitted for approval to FSIS Labeling and Program Delivery Staff,

3

accompanied by FSIS form 7234-1, Application for Approval of Labels, Marking, and Devices, and approved by such staff." 9 C.F.R. § 412.1(a). Here, it is undisputed that the label at issue has been approved by FSIS and found to not be misleading or false.

Defendants recite the history of "country of origin labels" thoroughly in their briefs. *See* **Doc. 46, 1:20-cv-00106, at 19-23.** In 2016, Congress made country or origin labeling optional for beef products. Pub. L. No. 114-113, 759, 129 Stat. 2242, 2284-85 (2016). The USDA treats country of origin labels as optional. The USDA continues to approve beef labels; if a producer wants to label its beef with a country of origin, it must comply with FSIS's approved standard before doing so. 21 U.S.C. §607(d); *See* Food Safety Inspection Service's Food Standards and Labeling Policy Book, available at https://www.fsis.usda.gov/wps/wcm/connect/ 7c48be3e-e516-4ccf-a2d5-b95a128f04ae/Labeling-PolicyBook.pdf?MOD=AJPERES (last visited March 9, 2020). The FSIS approval process is required by federal law and beef products could not be sold unless the seller complied with that process. *See Kuenzig v. Kraft Foods, Inc.*, 2011 WL 4031141, at *7 n.8 (M.D. Fla. Sept. 12, 2011) ("The regulations relating to the FMIA and the PPIA are clear that Defendants' labels were required to be submitted to the FSIS for approval prior to their use, and given that the labels were, in fact used, the Court will presume that the labels received the FSIS's approval."), *aff'd*, 505 F. App'x 937 (11th Cir. 2013).

### C.     Beef Labels at issue were approved by USDA.

As noted above, before a label may be used, it must be approved by the USDA. It appears to be undisputed that the labels at issue here were approved. Moreover, the label at issue is consistent with USDA regulations.

According to the FSIS labelling book "labeling may bear the phrase 'product of USA' under one of the following conditions: 1. If the Country to which the product is exported requires

this phrase, and the product is processed in the U.S., or 2. The product is processed in the U.S. (i.e. is of domestic origin)." FSIS Labeling Book at 147. "Processed" means as follows:

> **Labeling to Meet Export Requirements**
> . . . . "Product of the U.S.A." has been applied to products that, at a minimum, have been prepared in the United States. It has never been construed by FSIS to mean that the product is derived only from animals that were born, raised, slaughtered, and prepared in the United States. *The only requirement for products bearing this labeling statement is that the product has been prepared (i.e., slaughtered, canned, salted, rendered, boned, etc.).* No further distinction is required. In addition, there is nothing to preclude the use of this label statement in the domestic market, which occurs, to some degree. This term has been used on livestock products that were derived from cattle that originated in other countries and that were slaughtered and prepared in the United States. Also, the cattle could have been imported, raised in U.S. feed lots, and then slaughtered and prepared in the United States. The beef products from these cattle can be labeled as "Product of the U.S.A." for domestic and export purposes.
> **Labeling of Imported Beef Products**
> Under Section 20 of the FMIA (21 U.S.C. § 620), imported beef products are to be treated as "domestic" product upon entry into the United States.

66 Fed. Reg. 41160, at 41160-61 (Aug. 7, 2001) (emphasis added). Therefore, the regulations are clear that cattle born and raised in a foreign country but slaughtered in the United States may use the "Product of the USA" label.

## LEGAL STANDARD

In reviewing a Fed. R. Civ. P. 12(b)(6) motion to dismiss, "a court must accept as true all well-pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party." *Moss v. Kopp*, 559 F.3d 1155, 1159 (10th Cir. 2010). "To withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In ruling on a motion to

dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

The Court may consider materials that are part of the public record or materials that are embraced by the pleadings and there is no dispute as to their authenticity. *Peterson v. Saperstein*, 267 F. App'x 751, 754 (10th Cir. 2008); *Hodgson v. Farmington City,* 675 F. App'x 838, 840-41 (10th Cir. 2017) ("The district court correctly noted that facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment."). Here, at Defendants' request the Court takes judicial notice of the relevant USDA regulations and the undisputed fact that the beef labels have been approved by the USDA. Plaintiffs did not object.

## DISCUSSION

### I. Federal Preemption.

Defendants argue that Plaintiffs' claims challenging federally approved beef labels are expressly preempted by federal law and should be dismissed. The FMIA is clear that labeling requirements in addition to or different than those under the FMIA or approved by the USDA are preempted. 21 U.S.C. § 678. Plaintiffs seek to effectively alter or change USDA approved labels which are allegedly misleading. Therefore, the Court agrees with the Defendants and holds that Plaintiffs' state law claims are preempted under 21 U.S.C. § 678.

#### A. Preemption law.

"Congress has the power to pre-empt state law under Article VI of the Constitution, which provides that 'the Laws of the United States shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.' " *Emerson v. Kansas City S. Ry. Co.*, 503 F.3d 1126, 1128–29 (10th Cir. 2007), *quoting in part* U.S. Const. art. VI. Because of the supremacy of federal law, "state law that conflicts with federal law is without effect." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). There are three types of preemption: 1) "express preemption, which occurs when the language of the federal statute reveals an express congressional intent to preempt state law;" 2) "field preemption, which occurs when the federal scheme of regulation is so pervasive that Congress must have intended to leave no room for a State to supplement it;" and 3) "conflict preemption, which occurs either when compliance with both the federal and state laws is a physical impossibility, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Mount Olivet Cemetery Ass'n v. Salt Lake City, 164 F.3d 480, 486 (10th Cir.1998), *quoted in US Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1324 (10th Cir. 2010).

Defendants primarily argue that the claims in this case are expressly preempted under 21 U.S.C. § 678. Express pre-emption occurs when Congress "define[s] explicitly the extent to which its enactments pre-empt state law." *Emerson v. Kansas City S. Ry. Co.*, 503 F.3d 1126, 1128–29 (10th Cir. 2007). Where there is an express preemption clause, the Court must "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Id.* at 1129.

Congress enacted the Federal Meat Inspection Act ("FMIA") in part to ensure that meat products are properly labeled. 21 USC § 602. Meat cannot be sold if the product has labeling that

is false or misleading. § 607(d).  The FMIA contains an express preemption clause, 21 USC § 678. 21 U.S.C. § 678 provides that "marking, **labeling**, packaging, or ingredient **requirements in addition to, or different than**, those made under this chapter may not be imposed by any State or Territory or the District of Columbia." (emphasis added).  The United States Supreme Court noted that "[t]he FMIA's preemption clause sweeps widely…[t]he clause prevents a State from imposing any additional or different—even if non-conflicting—requirements." *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 459, 132 S. Ct. 965, 970, 181 L. Ed. 2d 950 (2012).  "This includes claims raised under state common law or statutory law." *Rivera v. Philip Morris, Inc.,* 395 F.3d 1142, 1146 (9th Cir.2005) ("Under the Supremacy Clause of the United States Constitution, Congress may preempt state common law as well as state statutory law through federal legislation."); *see also Dist. 22 United Mine Workers of Am. v. Utah,* 229 F.3d 982, 987 (10th Cir.2000) (same).

      **B.**      **FMIA Expressly preempts this state law action.**

Here, the core of Plaintiffs' various causes of action is that Defendants are misleading consumers by representing that their foreign-born beef is a product of the United States.  They seek injunctive relief directing Defendants to change or modify the country of origin labels, or damages for the allegedly misleading labels.

Defendants argued, and Plaintiffs do not dispute, as follows:

- The FMIA grant the USDA exclusive authority to regulate the labels and packing of beef products, which the USDA exercises through its Food Safety Inspection service (FSIS).  **20cv106, Doc. 46 at 5-6;**
- The FSIS administers a comprehensive label approval program ensuring that meat products do not bear any false or misleading labeling and do not give any false impression as to a product's origin or quality. **9 CFR 317.8(a), 412.1(a); 20 CV 106 Doc. 46 at 6.**
- A beef product label cannot be used until FSIS has approved it, including by determining that the label contains no false or misleading words or pictures. ***Id.***
- FSIS permits a beef product label to bear the phrase "Product of the USA" if the product is processed in the United States.  The USDA defines the term processed to mean prepared (slaughtered) in the United States.  The USDA does not require

8

- that cattle must be born and raised in the United States for the beef processed from them to quality as a Product of the USA. *See* 66 Fed. Reg. 41160, at 41160-61 (Aug. 7, 2001).
- FSIS necessarily approved the product labels. The FSIS approval process is required by federal law and the products could not be sold unless the seller complied with the process. *Kuenzig v. Kraft Foods, Inc.*, 2011 WL 4031141, at & n.8 (M.D. Fla. Sept. 12, 2011) ("The regulations relating to the FMIA… are clear that Defendants' labels were required to be submitted to the FSIS for approval prior to their use, and given that the labels were, in fact used, the Court will presume that the labels received the FSIS's approval."), *aff'd* 505 F. App'x 937 (11th Cir. 2013). Plaintiffs do not disagree.
- The Court may take judicial notice of FSIS's approval of product labels because they are matters of public record and not subject to any dispute. *See, e.g., Shalikar v. Asahi Beer U.S.A. Inc.*, 2017 WL 9362139, at *2 (C.D. Cal. Oct. 15, 2017) (considering agency approvals of food or beverage labels).

Here, Plaintiffs seek (1) an injunction to change the "misleading labels"; (2) an injunction prohibiting Defendants from using the Product of USA label on their foreign-born beef; and (3) damages for the misleading labels. *See* 20-cv-106, **doc. 1-1, p. 64 of 67.** Clearly, Plaintiffs seek injunctive relief that creates labeling requirements "in addition to, or different than" the USDA's standards. This injunctive relief is preempted under the plain language of 21 U.S.C. § 678.

Moreover, suits that seek damages for USDA approved beef labels on the ground that those labels misleading are also preempted under 21 U.S.C. § 678, as those claims would effectively require labeling different than the USDA approved labels. "FSIS's preapproval of a label must be given preemptive effect over state-law claims that would effectively require the label to include different or additional markings." *Barnes v. Campbell Soup Co.*, No. C 12-05185 JSW, 2013 WL 5530017, at *5 (N.D. Cal. July 25, 2013) (quotation marks omitted); *Webb v. Trader Joe's Co.*, Case No.: 19-CV-1587-CAB-WVG, 2019 WL 5578225, at *3- 4 (S.D. Cal. Oct. 29, 2019) (noting that plaintiff's state law claims "would effectively impose" an additional labeling requirement and "undermine federal agency authority"); *Craten v. Foster Poultry Farms Inc*., 305 F. Supp. 3d 1051, 1060-61 (D. Ariz. 2018) (concluding that a failure-to-warn claim challenging a label that had been preapproved by the FSIS was preempted by the PPIA); *La Vigne v. Costco*

9

*Wholesale Corp.*, 284 F. Supp. 3d 496, 507-11 (S.D.N.Y. 2018) (noting, among other things, that FSIS review "includes a determination of whether a label is false or misleading," so a jury finding for the plaintiffs "would directly conflict with the FSIS's assessment" and "introduce requirements in addition or different from those imposed by" federal law (internal citations omitted)); *Phelps v. Hormel Foods Corp.*, 244 F. Supp. 3d 1312, 1316-18 (S.D. Fla. 2017) ("FSIS's preapproval of a label 'must be given preemptive effect' over state-law claims that would effectively require the label to include different or additional markings." (citation omitted)); *Brower v. Campbell Soup Co.*, 243 F. Supp. 3d 1124, 1128-29 (S.D. Cal. 2017) (finding plaintiff's claims preempted where the FSIS previously found no fault with the labels at issue); *Trazo v. Nestle USA, Inc.*, 2013 WL 4083218, at *7-8 (N.D. Cal. Aug. 9, 2013) (concluding that "allowing a jury to weigh in on preapproved USDA labels would surely conflict with the federal regulatory scheme" as a negative "jury verdict would improperly 'trump' the USDA's authority"), *reconsidered on other grounds*, 113 F. Supp. 3d 1047 (N.D. Cal. 2015); *Meaunrit v. ConAgra Foods Inc.*, 2010 WL 2867393, at *6-7 (N.D. Cal. July 20, 2010) (citing cases rejecting state-law challenges to federally approved labels); *Meaunrit v. Pinnacle Foods Grp.*, 2010 WL 1838715, at *7 (N.D. Cal. May 5, 2010) ("To allow a jury to pass judgment on Defendant's labels, notwithstanding the USDA's approval, would disrupt the federal regulatory scheme.").

Therefore, all of Plaintiffs' claims are preempted under 21 USC § 678 because they seek to impose different or additional labeling requirements than those found under the FMIA. *See, e.g., Kuenzig v. Kraft Foods, Inc.*, No. 8:11-CV-838-T-24 TGW, 2011 WL 4031141, at *6-7 (M.D. Fla. Sept. 12, 2011) ("any state law claim based on the contention that the labels are false or misleading [was] preempted, because such a claim would require Plaintiff to show that the information stated on the labels should have been presented *differently* (thus, imposing a *different*

*and/or additional* labeling requirement than those found under the FMIA and the PPIA).", *aff'd* 505 F. App'x 937 (11th Cir. 2013); *Phelps v. Hormel Foods Corp.*, 244 F. Supp. 3d 1312, 1316–17 (S.D. Fla. 2017) ("By attempting to challenge the FSIS-approved [labels] as false, misleading, or deceptive, each of Plaintiff's claims improperly seeks to impose additional or different requirements on Defendant's labeling than those required by USDA.").

        **C.**        **Plaintiffs' remaining arguments against preemption are unavailing.**

Plaintiffs spend much of their argument analyzing *different* preemption clauses under different acts. For example, Plaintiffs refer to case law interpreting the Federal Cigarette Labeling and Advertising Act (the "FCLAA"). The Court finds these cases inapposite. That preemption clause applies to tobacco advertising about "smoking and health" but not to other advertising. Here, as the United States Supreme Court noted, the preemption clause under 21 USC § 678 sweeps widely, prohibiting states from requiring labels "in addition to, or different than" those approved by the USDA. §678. As noted above, the Court must look to the specific language of the preemption clause at issue. Therefore, the Court finds that the case law on the preemption clause under the FCLAA is irrelevant to the specific language of the FMIA's preemption clause under section § 678.

Plaintiffs argue that even if the claims based on the labels are preempted, they may proceed on the basis that Defendants' advertising is misleading customers. Plaintiffs' advertisement argument fails because (1) Plaintiffs pled that third-parties and not the Defendants themselves produced the false advertisements; (2) the advertisements appear to merely be a picture of the USDA approved label reflecting "Product of the USA" or "USDA approved"; (3) the USDA concluded those labels are not misleading or false; and (4) allowing this claim would undermine Congress's intent to create uniform standards for describing meat products under conflict

preemption. *Kuenzig v. Hormel Foods Corp.*, 505 F. App'x 937, 939 (11th Cir. 2013) (labels which complied with federal regulations and passed FSIS approval were presumptively lawful and not false or misleading. Therefore, the labels "could not become unfair or deceptive simply by virtue of being depicted in an advertisement."); *Phelps*, 244 F. Supp. 3d at 1317 n.2 ("PPIA and FMIA do not preempt all FDUTPA claims alleging false or misleading *non-label* advertising. However, the only advertising content to which Plaintiff objects in the Complaint is use of the terms "Natural" and "No Preservatives," which are claims approved by FSIS for use in describing the Products. Therefore, Plaintiff's FDUTPA claims based on advertising and marketing are preempted."). To the extent Plaintiffs request leave to amend their complaint as to their advertisement claims, they do not explain what facts they would assert to establish a plausible claim.

Plaintiffs argue that the preemption clause applies only to mandatory label requirements, not optional label requirements such as the country of origin. This argument is not reflected anywhere in the plain language of 21 U.S.C. § 678, which provides that "labeling…requirements in addition to, or different than those made under this chapter may not be imposed by any State…."

Plaintiffs argue that 21 U.S.C. § 678 grants New Mexico concurrent jurisdiction over beef labeling. Congress provided that states may, consistent with the requirements set forth under the FMIA, exercise concurrent jurisdiction with the USDA to prevent the distribution of meat products that have labeling that is false or misleading. *See* § 678 (state may not impose labeling requirement in addition to or different than those made under this chapter "but any State… may consistent with the requirements under this chapter exercise concurrent jurisdiction with the Secretary… for the purpose of preventing distribution for human food purposes of any such articles which are…misbranded."); *see also* 21 U.S.C. § 601(n)(1). However, that clause must be read in

conjunction with language in § 678 which provides that no state may impose labeling requirements "in addition to, or different than" those issued under the FMIA. "The states' concurrent jurisdiction has been interpreted to mean that states can impose sanctions for violations of state requirements that are equivalent to the FMIA and the PPIA's requirements." *Kuenzig v. Kraft Foods, Inc.*, No. 8:11-CV-838-T-24 TGW, 2011 WL 4031141, at *4 (M.D. Fla. Sept. 12, 2011), citing *National Broiler Counsel v. Voss,* 44 F.3d 740, 746 (9th Cir.1994); *Bates v. Dow Agrosciences LLC,* 544 U.S. 431, 442, 447, 125 S.Ct. 1788, 161 L.Ed.2d 687 (2005) (construing similar language in 7 U.S.C. § 136v(b)); *see also Phelps v. Hormel Foods Corp.*, 244 F. Supp. 3d 1312, 1317 (S.D. Fla. 2017) (rejecting concurrent jurisdiction argument as to FMIA). Here, Plaintiffs do not seek to impose equivalent requirements as those imposed by the USDA or to enforce the USDA's labeling requirements. Rather, they seek to impose different labeling requirements by asking this Court to declare USDA approved labels misleading. Plaintiffs' interpretation of 21 USC § 678 would render the express preemption clause a nullity.

Plaintiffs alternatively argue that even if the USDA approved the labels at issue, their decision to approve the labels was wrong and therefore their decision has no effect. Plaintiffs offered no support for this argument, and the Court disagrees. As explained above and in Plaintiffs' motion, the USDA has authority to regulate country-of-origin labeling. 20 cv 106, **Doc. 46 at 5-12.** Moreover, Defendants explained in detail that the USDA exercised its authority to approve labels and determine whether they are misleading. *Id.*; 21 USC 607(d), (e); *see also Background section, supra*. Even if the USDA made the wrong decision in determining that the labels were not misleading, it is unclear how that changes the preemption analysis.

**II.        Court declines to exercise discretion under primary jurisdiction doctrine.**

Defendants argue that the Court should dismiss the claims under the primary jurisdiction doctrine. "Even where a court has subject matter jurisdiction over a claim, courts have discretion to refer an issue or issues to an administrative agency. The doctrine of primary jurisdiction is specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency." *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1238 (10th Cir. 2007) (internal quotation marks and citations omitted).

"A district court's decision to invoke the primary jurisdiction doctrine "require[s] it to consider whether the issues of fact in the case: (1) are not within the conventional experience of judges; (2) require the exercise of administrative discretion; or (3) require uniformity and consistency in the regulation of the business entrusted to the particular agency. Additionally, when the regulatory agency has actions pending before it which may influence the instant litigation, invocation of the doctrine may be appropriate." *Id.* at 1239.

The Court finds Defendants' arguments persuasive. *See* **Doc. 46 at 36 to 38 of 52.** However, the primary jurisdiction doctrine requires the court to stay the matter, refer the matter to the agency or dismiss this matter without prejudice. *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1239 (10th Cir. 2007). Because the Court is dismissing the matter with prejudice on other grounds, the Court declines to exercise its discretion to stay or refer this matter to the USDA.

**III.   New Mexico Unfair Practices Act claim fails as a matter of law.**

Alternatively, even if Plaintiffs' New Mexico UPA claims were not preempted, they fail as a matter of law as explained below.

    **A.   Plaintiff Lucero lacks standing under the UPA as a competitor.**

Plaintiff Lucero admits that he cannot assert a UPA claim as a competitor under NMSA 57-12-7. **Doc. 50 at 34 of 47.** Therefore, the Court dismisses Plaintiff Lucero's UPA claim.

### B.     Plaintiffs' UPA claims otherwise fail under statutory safe harbor.

The UPA contains a safe harbor clause precluding UPA liability for conduct that is permissible under federal law. Because Defendant's labeling practices are permissible under federal law, specifically under the FMIA and regulations, Defendants' conduct cannot constitute an unfair practice.

Section 57-12-7 of the New Mexico Unfair Practices Act provides:

> Nothing in the Unfair Practices Act shall apply to actions or transactions expressly permitted under laws administered by a regulatory body of New Mexico or the United States, but all actions or transactions forbidden by the regulatory body, and about which the regulatory body remains silent, are subject to the Unfair Practices Act.

N.M. Stat. Ann. § 57-12-7. "For the UPA exemption to apply, more than the mere existence of a regulatory body is required. At a minimum, the regulatory body must actually administer the regulatory laws with respect to the party claiming the exemption, thereby exercising at least the modicum of oversight that the exempting language indicates is required. Thus, the party claiming the exemption must have obtained permission from the regulatory body to engage in the business of the transaction, thereby subjecting that party to the regulatory body's oversight." *Zamora v. Wells Fargo Home Mortg., a Div. of Wells Fargo Bank, N.A.*, No. CV 12-0048 RB/LFG, 2012 WL 12895364, at *7 (D.N.M. Sept. 18, 2012) (internal quotation marks and citations omitted), *citing State ex rel. Stratton v. Gurley Motor Co.*, 737 P.2d 1180, 1184 (N.M. Ct. App. 1987).

Here, as explained in detail above, the labels were approved by the USDA and FSIS and comply with relevant regulations. Therefore, the labels are expressly permitted under the laws administered by the USDA and fall within the safe harbor clause of NMSA § 57-12-7. *Kuenzig*, 2011 WL 4031141, at *7 (citations omitted) ("labels that have received FSIS preapproval "are presumptively lawful and not false or misleading." "If the FSIS had determined that the labels were false or misleading, Defendant['s] labels would not have been approved, and the FSIS would

15

have prohibited Defendant[ ] from using the labels."); *Phelps v. Hormel Foods Corp.*, 244 F. Supp. 3d 1312, 1318–19 (S.D. Fla. 2017) ("Defendant cannot be liable under the FDUTPA because the challenged labels were approved by FSIS and therefore fall within the safe harbor provision.")

Therefore, both Plaintiffs' UPA claims are dismissed with prejudice.

**IV.     Unjust Enrichment Claims fail.**

Alternatively, Plaintiffs' unjust enrichment claims fail as a matter of law, even if they are not preempted. An unjust enrichment claim under New Mexico law requires that "(1) another has been knowingly benefitted at one's expense (2) in a manner such that allowed of the other side to retain the benefit would be unjust." *Ontiveros Insulation Co. v. Sanchez*, 3 P.3d 695, 699 (N.M. Ct. App. 2000).

As explained above, Defendants are complying with USDA regulations and their approved labels are presumptively lawful and not false or misleading. There is nothing unjust about using approved USDA labels. *Kuenzig*, 2011 WL 4031141, at *7 (citations omitted); *Phelps v. Hormel Foods Corp.*, 244 F. Supp. 3d 1312, 1318–19 (S.D. Fla. 2017).

Moreover, Plaintiff Thornton bought the offending beef from retailers. Plaintiff Thornton does not explain why she does not have a breach of contract claim with the retailers. Generally, an unjust enrichment claim does not sound when they could pursue her claims in contract. *Ontiveros Insulation Co. v. Sanchez*, 2000-NMCA-051, 129 N.M. 200, 203–04, 3 P.3d 695, 698–99.

Plaintiff Lucero's unjust enrichment claim should also be dismissed because his claims are governed by contracts either with the Defendants or third parties. *See* **20-cv-106, Doc. 46 at 42-43 of 52.** New Mexico law disfavors "an unjust enrichment claim against a third party when the that claim involves the same subject as a contract, unless there is something preventing the

plaintiffs from pursuing the contract claims." *Abraham v. WPX Energy Prod., LLC*, 20 F. Supp. 3d 1244, 1276 (D.N.M. 2014).

**V.      Plaintiff Thornton's Breach of Warranty Claim fails as a matter of law.**

Even if Plaintiff Thornton's breach of warranty claim was not preempted, it would fail as a matter of law. *See, e.g., Kuenzig v. Kraft Foods, Inc.*, No. 8:11-CV-838-T-24 TGW, 2011 WL 4031141, at *7 (M.D. Fla. Sept. 12, 2011) (Plaintiff's breach of express warranty claims that contradict the FSIS's nutrition labeling regulations are preempted.").

Plaintiff Thornton did not plead or argue in her response that she filed a pre-suit notice. Plaintiff must give notice within a reasonable time under NMSA § 55-2-607.  "A buyer wishing to sue a seller for a breach of warranty must within a reasonable time after he discovers or should have discovered any breach[,] notify the seller of breach or be barred from any remedy[.]  Section 55–2–607(3)(a). On its face, Section 55–2–607 facially operates to bar Plaintiff, as the "buyer" of the boots, from "any remedy" if he failed to abide by its provisions. The failure to allege sufficient notice may be a fatal defect in a complaint alleging breach of warranty."  *Badilla v. Wal-Mart Stores E., Inc.*, 2017-NMCA-021, ¶ 10, 389 P.3d 1050, 1054 (internal quotation marks omitted). Defendants argue that the complaint may constitute sufficient notice. However, the New Mexico Court of Appeals concluded that failure to give pre-suit notice was unreasonable under the circumstances of that case. *Id.*  Here, Defendants did not allege or argue they gave pre-suit notice or argue whether notice was reasonable under the circumstances.

Here, Plaintiff Thornton failed to plead that she gave notice, and Plaintiff does not suggest she could correct this in an amended complaint.  Moreover, she did not plead or argue in her response that the notice under the circumstances was reasonable.  Rather, the Court concludes that any lack of pre-suit notice was unreasonable because she had capable and experienced counsel.

17

Moreover, failure to provide pre-suit notice deprived Defendants of the opportunity to respond to Plaintiff's concerns and explore settlement. *Badilla v. Wal-Mart Stores E., Inc.*, 2017-NMCA-021, ¶ 21, 389 P.3d 1050, 1057 ("Factors to be considered in determining reasonableness of notice include the obviousness of the defect, the perishable nature of the goods, and possible prejudice to the seller from the delay.").

## VI.     Defendants' remaining arguments for dismissal.

Defendants assert several other grounds for dismissal.  For example, Defendants also argue that Plaintiffs' claims should be dismissed because they violate the dormant commerce clause. Generally, the Court avoid unnecessarily reaching constitutional issues when a case fails on other grounds. Therefore, the Court declines to address this argument.

## VII.    Plaintiff Lucero's Motion to Amend Complaint.

Plaintiff Lucero seeks to amend his complaint to replace his UPA claim with a claim for violation of the New Mexico Antitrust Act (NMSA § 57-1-3).  Plaintiff Lucero appeared to acknowledge that his New Mexico UPA claim in his first amended complaint fails because, as a competitor of Defendants, he lacks standing. **Doc. 55 at 2.** Defendants argue that amendment here is futile.  The Court agrees.  The ATA claim fails because it is also preempted, for the same reasons as above.

Plaintiff Lucero argues that his ATA claim is not preempted by federal antitrust law. However, Plaintiff merely repackages his UPA allegations here. Plaintiff Lucero's ATA claim still alleges that Defendants mislabeled their beef.  Plaintiff Lucero would require Defendants to modify their labeling practices and would therefore impose requirements that are "in addition to or different than" the USDA's standard.  For example, Plaintiff Lucero's proposed Second Amended complaint **(20-cv-105, Doc. 55-1)** alleges as follows:

- Defendants deceptively label and market their beef as product of the USA, when the cattle were in fact born and raised in other countries. ¶¶2, 25, 27.
- Defendants' misrepresentations about the country of origin of their beef prompts consumers to buy their beef products and pay more to Defendants. ¶ 9.
- By deceiving customers about the origin of their products, Defendants are able to sell a greater volume of products. ¶11.
- Contrary to representations made by Defendants, their products are not actually a product of the United States. Defendants made this misleading or deceptive representations knowing that consumers would rely on the representations. ¶¶ 31, 37.
- "Defendants have acted unfairly and deceptively in a scheme to fraudulently label their Beef Products, so that they may compete in a predatory and anti-competitive manner in violation of the ATA, by misrepresenting to consumers that the muscle cuts of beef in the Products originates exclusively from American ranchers and farmers like Plaintiff Lucero and other similarly situated in order to capitalize on the reputation of those domestic producers and cause underpayment for their cattle to Plaintiff and the class members." ¶ 57.
- As a remedy, Plaintiff Lucero requests that the Court issue an injunction requiring Defendants to remove the deceptive or inaccurate labeling and affirmatively label their beef as a foreign product. **Doc. 55-1 at p. 26 and 27.**

The alleged violation of the ATA is the alleged mislabeling or misbranding of foreign cattle as product of the USA, which causes consumers to buy the misbranded beef. Plaintiff's claim is still based on the same theory as above that the USDA approved labels are misleading. Therefore, Plaintiff Lucero's ATA claim is still preempted under the FMIA for the same reasons as stated above.

### B.     Alternative grounds for dismissal of ATA claim.

Alternatively, Defendants argue that Plaintiff (1) failed to allege an antitrust injury caused by allegedly anticompetitive behavior. Plaintiff appears to only briefly address these arguments. The Court agrees with Defendants.

New Mexico law follows federal antitrust law to construe its provisions. *Nass-Romero v. Visa U.S.A., Inc.*, 279 P.3d 772, 777 (N.M. Ct. App. 2012). An antitrust plaintiff has standing to bring a lawsuit when it alleges facts showing that it has suffered an antitrust injury *Abraham v. Intermountain Health Care, Inc.,* 461 F.3d 1249, 1267-68 (10th Cir. 2006).

"An antitrust injury is an injury of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful." *Abraham v. Intermountain Health Care Inc.*, 461 F.3d 1249, 1267 (10th Cir. 2006). Here, Plaintiff's alleged injury – receiving less for their beef as a result of Defendants' USDA approved product labeling– is not an injury resulting from anticompetitive behavior. Rather, the injury resulted from Defendants complying with USDA regulations. A plaintiff does not suffer an antitrust injury when the injury results from governmental regulatory framework authorizing Defendants' conduct. *In re Canadian Imp. Antitrust Litig.*, 470 F.3d 785, 791 (8th Cir. 2006) (injury was caused by the federal statutory and regulatory scheme adopted by the United States government, not by the conduct of the defendants.").

## CONCLUSION

For the reasons stated above, all of Plaintiffs' claims are preempted. Alternatively, they also fail to state a claim as a matter of law. Plaintiff Lucero's motion to amend is denied as futile.

**IT IS THEREFORE ORDERED** that Defendants' Motions to Dismiss (**20-cv-105, Doc. 43; 20-cv-106, Doc. 45**) are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Lucero's Motion to Amend Complaint (**20-cv-105, Doc. 55**) is **DENIED.**

**IT IS FINALLY ORDERED** that the consolidated cases are **DISMISSED WITH PREJUDICE.**

Separate judgments dismissing both cases will be entered.



KEA W. RIGGS
UNITED STATES DISTRICT JUDGE